UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP GLOBAL, INC, a Nevada Company,<br>Plaintiff,<br>v.<br>EVERGED LLC, a Delaware company,<br>Defendant. | Case No.: 3:26-CV-01086-GPC-MSB<br><br>**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION TO DISMISS AND STRIKE**<br><br>**[ECF No. 30]** |
| EVERGED LLC,<br>Counter-Complainant,<br>v.<br>LOOP GLOBAL, INC.; and ZACK MARTIN<br>Counter-Defendants. | |

On May 5, 2026, Plaintiff Loop Global, Inc. filed a motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b) and a motion to strike under Rule 12(f). ECF No. 30. The motion has been fully briefed. ECF Nos. 38, 39.

Based on the reasoning below, the Court DENIES in part and GRANTS in part Plaintiff's motion to dismiss and strike.

## FACTUAL BACKGROUND

Defendant and Counter-Complainant EVerged LLC ("EVerged") is an energy technology company focused on developing and integrating renewable energy and advanced technology. ECF No. 20 ("A&C") at 38.[1] Plaintiff and Counter-Defendant Loop Global, Inc. ("Loop") is a leading provider of turnkey EV charging solutions in several countries. ECF No. 1 ("Compl.") ¶ 21.

In September 2022, EVerged and Loop first met through their respective representatives. A&C at 38. On October 5, 2022, the two parties entered into a mutual non-disclosure agreement to protect confidential information shared in connection with exploring potential business opportunities in the energy efficiency sector. *Id.*

On March 21, 2023, The City of San Diego (the "City") issued a Request for Proposal ("RFP") for an as-needed Electric Vehicle Supply Equipment ("EVSE") contractor. *Id.* The RFP offered the selected contractor the exclusive rights to install as-needed EVSE in the City's public spaces and parking lots. *Id.* The RFP contained specific requirements, including (1) use of a multi-channel payment method and (2) charger uptime in excess of 97%. *Id.* at 38-39. The RFP also included a "No Third Party Beneficiaries" provision that states the following:

> "**No Third Party Beneficiaries**. Except as may be specifically set forth in this Contract, none of the provisions of this Contract are intended to benefit any third party not specifically referenced herein. No party other than City and Contractor shall have the right to enforce any of the provisions of this Contract."

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

*Id*. at 40.

During and throughout this time, “EVerged never entered into any form of subcontractor agreement with Loop.” *Id*.

On July 6, 2023, EVerged submitted a timely proposal to the City in response to the RFP (the “Proposal”). *Id*. The Proposal contained information provided by Loop, including representations of “99% uptime performance” and marketing slides that displayed Loop’s chargers having “tap-to-pay functionality.” *Id.* The Proposal additionally stated, “Loop Global has approved this project to be 100% funded through their Impact Fund which is currently funded over $60 MM with more funding sources pending.” *Id.* at 41. Moreover, the Proposal explained the “Roles and Responsibilities” of the “core team.” Compl., ¶ 35; *id*. at 7. EVerged labeled itself as “Prime Contractor,” where it would be responsible for, inter alia, “secur[ing] fund[s] for the Project.” Compl., ¶ 36; A&C at 7. The Proposal also labeled Loop as a “Strategic” and “Major” subcontractor, where it would be responsible for providing compliant charging stations, end user software, and data services. Compl., ¶ 37; A&C at 7. Further, Section K of the Proposal listed Loop as a subcontractor and noted “subcontractors may not be substituted without the written consent of the City.” Compl., ¶ 41; A&C at 8. The Proposal was later incorporated into the Project’s governing contract. Compl., ¶ 32; A&C at 7.

On October 11, 2023, the City informed EVerged that based on its initial evaluation criteria in the RFP, it rated EVerged’s Proposal within 7 points of another competing proposal, resulting in the City issuing an additional set of supplemental criteria for further evaluation and requiring a mandatory interview and supplemental submission. A&C at 41. On October 20, 2023, in preparation for the new evaluation and interview, then Vice President of Operations at Loop, Christopher Becker (“Becker”), sent an email to EVerged with attachments providing written statements, images, and comments with “the intent that EVerged would include and rely upon them in providing

its written response and oral interview presentation responses to the City." *Id.* Additionally, Eric Hodonsky, Loop's then Chief Software Officer, and Zack Martin, Loop's then Chief Executive Officer and Chief Financial Officer, were copied on that email. *Id.*

Loop allegedly made the following representations in the October 20, 2023 email to EVerged:

(a) "EVC Product Roadmap . . . EV Kiosk: Multi-Payment Options: The chip and tap reader on our EV kiosk accepts a wide range of payment methods . . . [u]sers can simply tap their payment card or smartphone on the reader to initiate the charging process, eliminating the need for cumbersome cables and cards.";

(b) "99% Uptime Commitment: Loop's commitment to providing services where customers can charge their electric vehicles without disruption. Loop stands behind a 100% Uptime Guarantee and will reimburse Site Hosts for disruption to charging service connectivity.";

(c) "Loop Global is fully committed to 100% financing EVerged for all Capital requirements for this contract over the 10-year period of performance."; and

(d) indicated that Mr. Martin would be the speaker attesting to these points at the interview with the City.

*Id.* at 42-44.

EVerged incorporated these representations into the slide deck for the oral interview presentation to the City, and Loop representatives reviewed and approved the slide deck presentation prior to the interview. *Id.* at 44.

On October 23, 2023, EVerged provided its supplemental submission and presented its Proposal to the City with Loop and Baker Electric representatives present. *Id.* at 44-45. The supplemental submission itself labeled Loop as a team member with the role of "EV Charging OEM." Compl., ¶ 53; *id.* at 9. Martin, Hodonsky, and Becker

allegedly spoke on behalf of Loop during the interview and made the following representations to EVerged and the City: (a) Becker stated the Loop chargers would have multiple payment options including tap-to-pay functions, reflected in slides 5 and 6 in the slide deck; and (b) Martin represented that Loop would provide full financing to EVerged for all capital requirements for the Project over its ten-year term, reflected in slide 12 of the slide deck. A&C at 45. However, when the City asked for further clarification and details on capital funds and funding options, EVerged responded with potential funding options beyond just Loop, including options with Bluestar, DLL Group, and other potential sources. Compl. ¶ 55; *id*. at 10. The supplemental submission was incorporated into the Project's governing contract. Compl., ¶ 52; A&C at 9.

In November 2023, based on the oral presentation, the City accepted EVerged's Proposal and executed a formal contract with EVerged for the Project (the "Contract"). A&C at 45.

After the Contract with the City was formalized, EVerged alleges Loop did not provide the 100% financing commitment it promised. *Id*. Loop, instead, disputed it ever agreed to provide such financing, and later "strung" EVerged along by repeatedly assuring EVerged that funding was imminent. *Id*. After not providing funding, Loop presented several alternative third-party funding arrangements, but EVerged rejected these options because they did not provide the 100% financing promised. *Id.* at 46. In late April 2025, EVerged eventually secured a "50 million dollar strategic investment" from Leonid Capital Partners, however, at "significant delay and materially adverse cost." Compl., ¶ 103; *id*. at 46.

At the same time, EVerged stated in a press release, "we firmly believe this [Leonid Capital] partnership places EVerged at the forefront of the EV charging industry." Compl., ¶ 105; A&C at 17. Anne Lowe, city representative and Zero Emissions Vehicles Program Manager, was also quoted in an Inside San Diego article

titled "First Round of New Electric Vehicle Chargers Has been Installed," where she stated "EVerged is contractually responsible for financing, permitting, constructing, operating, and maintaining the EV chargers for the duration of the contract." Compl. ¶¶ 115-116; A&C at 18.

In March 2025, EVerged communicated to Loop that Loop was removed from the Project and that it should no longer communicate with the City about the Project. *See* Compl. ¶¶ 97-102; A&C at 16. On May 6, 2025, EVerged posted about the first EV chargers installed in the city, which displayed Loop EV charging stations, and in July 2025, EVerged's press release and LinkedIn post displayed Loop Level 2 EV charging stations being set up around the city. Compl. ¶¶ 127-31; A&C at 20. This press release and the posts do not mention Loop. *Id*. EVerged had acquired the Loop chargers via BlueStar, a third-party distributor. A&C at 40.

After installing the acquired Loop chargers, EVerged discovered the chargers did not have the uptime in excess of 97% nor was the tap-to-pay functionality active across Loop's network, requiring manufacturer involvement to resolve the issues. *Id*. at 46. As a result, EVerged alleges they incurred significant time and expense to replace Loop's noncompliant chargers, causing further Project delays. *Id.*

EVerged also asserts it learned of Loop contacting various City employees without EVerged's knowledge and "made false and/or misleading statements regarding EVerged…to undermine and/or disrupt EVerged's relationship with the City and its position as the prime contractor for the Project." *Id*.

EVerged claims it had "spent two years working to overcome and recover from [Loop's misrepresentations]" and such misrepresentations were a direct and proximate cause of EVerged's damages. *Id*. at 46-47.

/ / /

/ / /

## PROCEDURAL HISTORY

On February 19, 2026, Plaintiff Loop Global, Inc. filed a complaint against Defendant EVerged LLC alleging: 1) violation of California Subletting and Subcontracting Fair Practices Act, Cal. Pub. Cont. Code. §§ 4100-14; 2) Breach of Contract as a third-party beneficiary; 3) Intentional Interference with Prospective Economic Advantage; and 4) Violation of Lanham Act, 15 U.S.C. § 1125(s). Compl. at 46-58. On April 10, 2026, EVerged filed an answer to the complaint and asserted three counterclaims, a request for declaratory judgment, and twenty-six affirmative defenses. A&C at 47-52. The causes of action include: (1) intentional misrepresentation; (2) negligent misrepresentation; and (3) intentional interference of contract. *Id.*

On May 5, 2026, Loop filed a motion to dismiss EVerged's counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and a motion to strike EVerged's request for declaratory judgement and asserted affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). ECF No. 30 ("Mot."). On June 2, 2026, EVerged filed a response in opposition. ECF No. 38 ("Opp."). On June 16, 2026, Loop filed a reply. ECF No. 39 ("Rep.").

## LEGAL STANDARD

### 1. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure12(b)(6) permits dismissal for "failure to state a claim for which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2) the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

A complaint may survive a motion to dismiss only if, taking all well pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the non-movant. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possible cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto*, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

**2. Federal Rule of Civil Procedure 9(b)**

Where a claim alleges fraud or is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ.

P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id. A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted).

Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct). In addition, the complaint must state "what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) superseded by statute on other grounds, *Private Sec. Litig. Reform Act of 1995*, 15 U.S.C. § 78u–4(b)(1), *as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

**3. Federal Rule of Civil Procedure 12(f)**

Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)). As such, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsys., Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). "Courts will not grant motions to strike

unless 'convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed.'" *Novick v. UNUM Life Ins. Co. of America*, 570 F. Supp. 2d 1207, 1208 (C.D. Cal. 2008) (quoting *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005)). "When ruling on a motion to strike, this Court 'must view the pleading under attack under the light most favorable to the pleader.'" *Id.* (citing *RDF Media Ltd.*, 372 F. Supp. 2d at 561).

**DISCUSSION**

Loop brings the instant motion and argues the following: (1) EVerged's first and second counterclaims do not sufficiently allege either intentional or negligent misrepresentation; (2) EVerged does not sufficiently allege its third counterclaim of intentional interference; (3) the declaratory judgment claim should be dismissed or stricken; and (4) several of EVerged's affirmative defenses should be stricken. Mot. at 10-11.

**1. First & Second Causes of Action – Intentional & Negligent Misrepresentation**

A party must plead five elements for intentional misrepresentation: (1) misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990, 102 P.3d 268, 274 (2004); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 259, 134 Cal. Rptr. 3d 588, 596 (2011), *as modified* (Dec. 28, 2011). The elements of a claim for negligent misrepresentation are: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App.3d 954, 962 (1986); *see Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152, 1166 (E.D. Cal. 2019).

Loop argues that these alleged intentional and negligent misrepresentations are not adequately pled because they fail to meet the particularity requirement of Rule 9(b) and the latter three elements of an intentional or negligent misrepresentation claim. Mot. at 17-27.

**a. Particularity**

To plead fraud with the particularity required by Rule 9(b), a complaint "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). When the defendant is an entity, a complaint generally must also identify the person who made the false representations on behalf of the entity. *See United States ex rel. Lee v. SmithKline Beecham*, 245 F.3d 1048, 1051 (9th Cir. 2001); *White v. J.P. Morgan Chase, Inc.*, 167 F.Supp.3d 1108, 1115 (E.D. Cal. 2018); *Griffin v. Green Tree Servicing*, LLC, 166 F.Supp.3d 1030, 1057-58 (C.D. Cal. 2015). Rule 9(b) only requires that "allegations of fraud ... be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.' " *Bly-Magee v. Calif.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993))

EVerged's counterclaims rest on representations Loop made through three channels: (i) Loop's October 20, 2023 email and attachments from Christopher Becker, (ii) direct oral statements by Becker, Hodonsky, and Martin to EVerged during the October 23, 2023 interview, and (iii) the information Loop provided to EVerged to include in its July 2023 proposal response to the RFP. Opp. at 8.

The first two channels meet the particularity requirement, while the last channel does not. As to the first channel, EVerged alleges that on October 20, 2023 (when), Becker on behalf of Loop, with Hodonsky and Martin copied, (who) sent EVerged an

email with attachments (where and how) with written statements, images, and comments that EVerged was to rely upon and include in its oral response and oral interview presentation to the City (what). A&C at 41. EVerged quotes the written statements (i.e., the 99% uptime commitment, the ability for the stations to complete contactless payments, and the 100% financing commitment) and alleges they are false. *Id*. at 42-44, 47. As to the second channel, EVerged separately alleges that on October 23, 2023 (when), Martin, Becker, and Hodonsky (who) spoke on behalf of Loop during the City interview (where and how) and made false representations about the Loop charger having contactless capabilities and Loop committing to 100% financing (what). EVerged also alleged that Loop never provided any portion of the 100% project financing and that Loop's chargers did not comply with project requirements (why). *Id*. at 46-47. Thus, EVerged has met the requirements of Rule 9(b) particularity for these two channels.

The third channel, however, only alleges that on July 6, 2023 EVerged submitted a proposal to the City that contained information provided by Loop, listing a 99% uptime performance, tap-to-pay functionality, and 100% funding through Loop's impact fund. A&C at 40-41. This allegation does not specify *when* Loop made representation to EVerged, *who* from Loop made that representation, *where* or *how* that representation was made, and *what* Loop represented in that communication. Details from a representation made by EVerged to the City cannot be substituted to meet this heightened pleading requirement. The factual allegations must specify the details of Loop's specific instance of misrepresentation.

In sum, Rule 9(b) particularity is met for the first two channels but not for the third identified channel.

**b. Intent to Induce Reliance**

Intent to induce reliance requires that the defendant made the false statement with the purpose of inducing the plaintiff to act or refrain from acting in reliance upon

it. *Ferreira v. Quik Stop Markets*, Inc., 141 Cal. App. 3d 1023, 1032 (Ct. App. 1983). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

For this element, Loop narrowly targets EVerged's second identified channel of misrepresentation, specifically the direct oral statements by Becker, Hodonsky, and Martin to EVerged during the October 23, 2023 interview. Loop argues that EVerged cannot rely on representations to the City because any representations made to the City were with the intention to win a contract with the City, not to induce EVerged's reliance. Mot., at 18.

Loop's argument is unpersuasive. While the interview setting and the presence of the City indicates that Loop likely made the representations with the intent to win the contract with the City, EVerged was also present at the interview and an alleged recipient of the representations. The proposition that Loop had an intent to win the contract does not defeat the allegation that Loop also intended to induce EVerged's reliance on that representation. Thus, this element is met.

**c. Justifiable Reliance**

Justifiable reliance requires that the plaintiff (1) actually and (2) reasonably relied upon the defendant's misrepresentation. *Dey v. Robinhood Markets, Inc.*, 780 F.Supp.3d 882, 891 (N.D. Cal. 2025). Loop contends that EVerged fails on both counts. Mot. at 22.

**i. Actual Reliance**

Actual reliance occurs when "the misrepresentation was an immediate cause of the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *see Watson v. Crumbl LLC*, 736 F. Supp. 3d 827, 847 (E.D. Cal. 2024). "[A]bsent such representation, [the party] would not, in all reasonable probability, have entered into the contract or other transaction. It is not ... necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive

factor in influencing his conduct .... It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976–77 (1997) (quotations and citations omitted).

In its Counterclaims, EVerged alleges EVerged actually relied on Loop's representations and would not have included or promoted Loop in connection with the Project without such representations. A&C at 48. Loop, however, maintains that this allegation fails to plead actual reliance because EVerged did not show that it changed its behavior based on any of the alleged representations. Rep. at 4. In Loop's view, "Loop and EVerged had already been working together for months, having collaborated on a proposal that was submitted in early July," so EVerged was only continuing that behavior rather than making any change. *Id.*

However, Loop's argument misstates the law for this element. California law does not require a plaintiff to prove a discrete pre-and-post behavioral shift. The standard asks whether the misrepresentation was an immediate cause of the plaintiff's conduct and whether the plaintiff would not have entered the transaction absent the representation. *Watson*, 736 F.Supp.3d at 847. EVerged's allegation that it would not have included or promoted Loop in connection with the Project but for Loop's representations directly tracks with this standard. Therefore, the Court finds that this element is met.

**ii. Reasonable Reliance**

Loop argues that EVerged's reliance on the statement of "100% financing" is unreasonable as a matter of law because it would contradict EVerged's statements to the City, the parties' entire course of dealing, and the sophistication of EVerged as a company. Mot. at 22-24.

The reasonableness of the plaintiff's reliance is judged by the plaintiff's knowledge and experience. *Watson*, 736 F.Supp.3d at 847. Thus, "[e]xcept in the rare case where the

undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *All. Mortg. Co. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995).

Here, EVerged has alleged that Loop represented that it was "fully committed to 100% financing" in its written October 2023 email and that the representation was repeated in an oral statement made by Martin during the interview with the City. Based on these representations, EVerged continued to include and promote Loop as a partner. Construing the facts in the light most favorable to EVerged, EVerged has plausibly alleged justifiable reliance. Loop's arguments about contract contradictions and course of dealing are precisely the type of factual disputes that cannot be resolved at the motion to dismiss stage.

Therefore, the Court finds that EVerged has sufficiently pled reasonable reliance.

**b. Resulting Damages**

To meet this element, "it is not enough for the complaint to allege damage was suffered." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012). Resulting damage requires "a complete causal relationship between the fraud or deceit and the plaintiff's damages." *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 840 (9th Cir. 2004) (brackets omitted). "If the defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent inducement, causation *cannot* be alleged and a fraud cause of action cannot be sustained." *Beckwith*, 205 Cal. App. 4th at 1064.

Additionally, in California, a party "must suffer actual monetary loss to recover on a fraud claim." *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995); *accord Abbot v. Stevens*, 133 Cal. App. 2d 242, 247, 284 P.2d 159 (1955) ("Fraudulent representations which work no damage cannot give rise to an action at law, and an allegation of a definite amount of damage is essential to stating a cause of action." (internal citation omitted)). At the motion to dismiss stage, a specific amount of

damages is not required as long as the alleged facts entitle the plaintiff to relief. *Furia v. Helm*, 111 Cal. App. 4th 945, 957 (2003), *as modified* (Sept. 10, 2003).

Here, EVerged alleges relying on Loop's 100% financing representation resulted in funding delays and unforeseen costs to secure alternative financing. A&C at 46. In terms of the chargers, EVerged alleges relying on Loop's representations about tap-to-pay capabilities and 99% uptime resulted in them using and replacing non-compliant chargers and experiencing further project delays. *Id*. These alleged damages are sufficient; EVerged does not have to include specific amounts in its pleading.

As a result, Loop's motion to dismiss the intentional misrepresentation claim is DENIED.

**2. Second Cause of Action –Negligent Misrepresentation**

Beyond the above arguments, Loop also contends that EVerged's negligent misrepresentation claim fails because it relies on promises of future conduct. Mot. at 27.

The first element for a negligent misrepresentation claim is a misrepresentation of past or existing material fact. *Fox v. Pollack*, 181 Cal. App.3d 954, 962 (1986); *see Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152, 1166 (E.D. Cal. 2019). "Although a false promise to perform in the future can support an intentional misrepresentation claim, it does not support a claim for negligent misrepresentation." *Stockton Mortg., Inc. v. Tope*, 233 Cal.App.4th 437, 458 (Cal. Ct. App. 2014) (citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 158–59 (Cal. Ct. App. 1991)). For example, in *Tarmann*, a promise to "pay for [the insured's] repairs immediately upon completion" was a promise of future performance, not actionable under a negligent misrepresentation claim. *Tarmann*, 2 Cal.App.4th at 158. Similarly, in *Stockton Mortgage*, a promise to "obtain a release of the notice of abatement action prior to the close of escrow ... was a promise of future performance, and thus [could not] be the basis for a negligent misrepresentation cause of action." *Stockton Mortg.*, 233 Cal.App.4th at 458.

There is, however, an exception to future predictions "(1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; [and] (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion." *Borba v. Thomas*, 70 Cal. App. 3d 144, 152 (Ct. App. 1977). "Examples of actionable statements under these exceptions include a sales agent's representation that a condominium with structural defects was nevertheless luxurious and an outstanding investment and a realtor's opinion that the purchaser of a particular lot would have an enforceable access easement." *Cohen v. S & S Constr. Co.*, 151 Cal. App. 3d 941, 946 (Ct. App. 1983) (citations omitted).

First, EVerged alleges that Loop represented that the chargers have contactless payment options and 99% uptime. A&C at 42. This is a representation about the charger's existing capabilities and, thus, meets this element.

Second, EVerged alleges that Loop represented its full commitment to 100% financing. *Id.* at 44-45. While EVerged argues that this describes a then-existing capability, this, at bottom, is a future promise to provide financing. The future promise also does not meet the exception requirements. Martin did not hold himself out to be an expert in financing but only the CEO of Loop. He also did not state his opinion as an existing fact when he represented a commitment to 100% financing. Thus, this element is not met, and negligent misrepresentation is not sufficiently pled for this 100% financing allegation.

In sum, Loop's motion to dismiss the negligent misrepresentation claim is DENIED as to the contactless payment and 99% uptime allegations but GRANTED as to the 100% financing allegation.

/ / /

**3. Third Cause of Action – Intentional Interference of Contract**

Under California law, an intentional interference of contract claim requires a party to show "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Loop maintains EVerged does not sufficiently allege the third, fourth, and fifth elements of this counterclaim. Mot. 28. Loop further argues, they are precluded from liability because they are not a stranger to the contract. *Id*. at 29-30.

**a. Intentional Act**

For the third intentional element to be satisfied, it is not necessary that a party's "primary purpose be disruption of the contract." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 77 (1998). Instead, the party need only show "interference is certain or substantially certain to occur as a result of [the party's] action." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1155-56 (2003). The third element incorporates a causation requirement that these intentional acts were a substantial factor in causing a breach. *See Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir.2008) (applying California law).

Loop argues EVerged fails to allege facts that plausibly show that Loop intended to disrupt EVerged's contract with the City. Mot. at 28. Essentially, in Loop's view, EVerged did not plead that Loop was intentional because it cannot show that Loop knowingly disrupted its own chargers' uptime or tap-to-pay functionality post-contract formation. Rep. at 7-8.

However, the Court finds this argument unavailing. EVerged need not show that Loop "knowingly disrupted" its chargers' uptime or tap-to-pay function functionality. All

that is needed at this stage are allegations that Loop knew their chargers were non-compliant and that Loop knew with substantial certainty that their misrepresentation would result in interference.

In its Counterclaims, EVerged alleges Loop had knowledge of the non-compliance of its chargers and its unwillingness and inability to provide the "100% financing." A&C at 49. EVerged also alleged that Loop had knowledge with substantial certainty that disruption of contract performance would occur based on these misrepresentations. *Id*. at 50. Accordingly, EVerged properly pled the intent element.

**b. Actual Disruption**

For the fourth element, actual breach, California law does not require an actual breach of contract, rather, disruption of performance is sufficient for a claim of intentional interference of contractual relations where "performance is made more costly or burdensome." *Pac. Gas & Elec. Co.*, 50 Cal. 3d 1118, 1129 (C.D. Cal. 2001); *see Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626, 633 (C.D. Cal. 2021) (" Mere 'disruption of the contractual relationship' is all Plaintiffs must show to demonstrate the disruption element.").

Here, EVerged alleges its performance was disrupted by the misrepresentations, resulting in EVerged needing to expend time working to secure alternative funding at a "materially adverse cost" and to replace noncompliant chargers at "significant time and expense," causing "project delays." A&C at 46-47. While EVerged and the City of San Diego still performed their contractual duties and no breach resulted, that consideration is not relevant for this element. Thus, the Court finds EVerged sufficiently pled the actual disruption element.

**c. Resulting Damages**

Loop contends EVerged cannot plead any resulting damage. First, EVerged's assertion that performance was made more expensive or difficult is merely conclusory

and unsupported by well-pled facts. Mot. at 29. Further, EVerged could not have been damaged because (1) EVerged secured funding with Leonid Capital Partners after rejecting third-party funding sources provided by Loop, (2) EVerged could not have been harmed by misrepresentation of EV chargers because it was discovered after EVerged had unlawfully terminated Loop, and (3) any delay or expense from the non-compliance of EV chargers was due to EVerged unlawfully terminating Loop from the project and operating without Loop's supporting network. *Id.*

This Court disagrees. EVerged alleges it sustained damages in the form of a significant delay in obtaining financing and EVerged eventually obtained financing from Leonid capital at a "materially adverse cost." A&C at 46-47. Further, EVerged took "significant time, expense, . . . [and] delays" to replace Loop's non-compliant chargers and "spent two years working to overcome and recover from [Loop's misrepresentations]." *Id.* EVerged's assertions are not merely recitations of elements or conclusory allegations, rather, EVerged is identifying specific costs and damages imposed on them. Accordingly, the damages element is met.

**d. Stranger Requirement**

Under California law, only strangers—interlopers who have "no legitimate interest in the scope or course of the contract's performance"—may be liable for intentional interference of contract. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 869 P.2d 454 (1994); *see Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 139 F. Supp. 3d 1141, 1163 (E.D. Cal. 2015). Only contracting parties can have a "direct interest and involvement" in the contract, and therefore any non-contracting party is a stranger to the contract. *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.,* 766 F.3d 1002, 1006-07 (9th Cir. 2014); *see Caliber Paving Co. v. Rexford Indus. Realty & Mgmt., Inc.*, 54 Cal. App. 5th 175, 182 (2020) ("[T]he Supreme Court did not confer immunity for that tort on noncontracting parties with a social or economic interest in the contract.").

Loop argues they are precluded from liability because EVerged's Proposal and supplemental submission (both integrated into the contract with the City) feature Loop as a "Major" and "Strategic" subcontractor, making Loop a third-party beneficiary with a "direct involvement and interest" with the contract and are therefore not strangers. Mot. at 30.

EVerged's counter-complaint sufficiently pleads that Loop is a stranger. While the Proposal and the supplemental submission labeled Loop as a "Major" and "Strategic" subcontractor, EVerged denies that Loop was a third-party beneficiary, citing an express "No Third Party Beneficiaries" clause in the Contract. A&C at 40. EVerged also asserts no subcontract agreement was ever executed between Loop and EVerged. *Id*. Though Loop does have an economic interest in the Contract, this alone doesn't establish Loop as a contracting party. Accordingly, the Court finds Loop can be liable for intentional interference of contract. Loop's motion to dismiss this claim is DENIED.

**4. Declaratory Judgment**

Loop argues that the declaratory judgment claim should be dismissed or stricken because (1) all of EVerged's counterclaims warrant dismissal and (2) the claim is a mirror image of claims that Loop already filed. Mot. at 30-31. As the Court finds that not all of EVerged's counterclaims warrant dismissal, Loop's first argument fails. The Court will thus turn to Loop's second argument.

"Declaratory relief is available at the discretion of the district court." *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982); *see* 28 U.S.C. § 2201(a); *Leadsinger, Inc. v. BMG Music Pub.,* 512 F.3d 522, 533 (9th Cir.2008). Additionally, the Declaratory Judgement Act's purpose is "to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." *Societe de Conditionnement v. Hunter Engineering Co.,* 655 F.2d 938, 943 (9th Cir.1981). Thus, if a

party is already obliged to defend against a suit, that party does not live in fear of a potential suit in accordance with the Act's purpose. *Englewood Lending Inc. v. G & G Coachella Invs., LLC*, 651 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009). Declaratory relief is also appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue." *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d 229, 231 (9th Cir. 1989) (quoting *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984)).

Within that line of thought, "[n]umerous courts have used that discretion to dismiss counterclaims under [Rule] 12(f) where they are either the 'mirror image' of claims in the complaint or redundant of affirmative defenses." *Stickrath v. Globalstar, Inc.*, No. 07-CV-1941-TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008); *see Hyundai Motor Am., Inc. v. Yahala Trading Co.*, No. 19-CV-1413-JVS-DFMX, 2020 WL 3963875, at *3 (C.D. Cal. May 1, 2020); *Guardant Health, Inc. v. Natera, Inc.*, 580 F. Supp. 3d 691, 713 (N.D. Cal. 2022); *Kahlenberg v. Bamboo Ins. Servs. Inc.*, No. 22-CV-06805-VAP-PDX, 2020 WL 13336569, at *7 (C.D. Cal. Dec. 14, 2020).

Here, EVerged seeks declarations that Loop is not a third-party beneficiary of the Contract, that Loop has no right to enforce any aspect of the Contract, and that Loop was incapable of complying with the requirements of the Project and the Contract. A&C at 51. Loop, however, alleges the mirror image of the relief sought in its second claim where it argues it is a third-party beneficiary and can enforce the Contract. Compl. ¶¶ 164-178. EVerged also argues Loop is not a third-party beneficiary in its sixth affirmative defense and argues that Plaintiff's chargers were deficient in its fourth affirmative defense. A&C at 30-31. Accordingly, the declaratory judgment claim is duplicative, and the court GRANTS the motion to strike this claim.

/ / /

/ / /

**5. Affirmative Defenses**

Finally, Loop moves to strike eleven of EVerged's twenty five affirmative defenses, including the First, Third, Eighth, Eleventh, Sixteenth, Seventeenth, Eighteenth, Twenty-First, Twenty-Second, Twenty-Fourth, and Twenty-Fifth affirmative defenses. Mot. at 32-34. EVerged concedes that "the defenses challenging the sufficiency of a plaintiff's pleading or proof are not properly framed as affirmative defenses" and, thus, do not oppose the motion here. Accordingly, the court GRANTS the motion to strike the eleven affirmative defenses.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion as to the first and third causes of action and **GRANTS IN PART AND DENIES IN PART** the motion as to the second cause of action. The Court also **GRANTS** the Plaintiff's motion to strike the declaratory judgment claim and the First, Third, Eighth, Eleventh, Sixteenth, Seventeenth, Eighteenth, Twenty-First, Twenty-Second, Twenty-Fourth, and Twenty-Fifth affirmative defenses. Plaintiff shall file an amended complaint within **21 days** of the Court's Order**.**

**IT IS SO ORDERED.**

Dated: August 6, 2026



Hon. Gonzalo P. Curiel
United States District Judge